

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 98-11143-GAO

SENTINEL PRODUCTS CORP. and
PACKAGING INDUSTRIES GROUP, INC.,
Plaintiffs,

v.

MICHAEL T. PLATT, and DICKINSON WRIGHT, PLLC,
a/k/a DICKINSON WRIGHT, MOON, VAN DUSEN & FREEMAN,
Defendants.

MEMORANDUM AND ORDER
July 22, 2002

O'TOOLE, D.J.

Sentinel Products Corp. and Sentinel Packaging Industries Group, Inc. (collectively "Sentinel") are suing their former attorney, Michael T. Platt, and his law firm, Dickinson Wright PLLC ("Dickinson Wright"), alleging that the manner in which the defendants prosecuted several Sentinel patent applications was negligent and breached the defendants' fiduciary duties to Sentinel. In particular, Sentinel alleges that Platt and Dickinson Wright incurred a conflict of interest by agreeing to represent both Sentinel and a former Sentinel employee, Dennis Knaus. Platt and Dickinson Wright now move for summary judgment in their favor, arguing that Sentinel has not produced any evidence which would tend to show that Sentinel was harmed by the defendants' allegedly wrongful behavior (docket no. 94). For the reasons to be discussed below, the motion for summary judgment is granted.

A.    <u>Summary of Facts</u>

In the summer of 1994, Sentinel hired Platt and Dickinson Wright to represent Sentinel on several patent law matters. Sentinel alleges that it hired Platt relying on a letter from Platt which stated that he and Dickinson Wright had "undertaken the representation of other clients in related fields, although in no field which poses a direct conflict" with the technologies that Sentinel was seeking to patent. On September 19, 1994, Platt and Dickinson Wright filed a patent application on Sentinel's behalf concerning "Cross-linked Foam Structures of Essentially Linear Polyolefins and Process for Manufacturing" (patent application no. 08/308,801). Two weeks later, on September 30, 1994, Platt and Dickinson Wright filed two patent applications on behalf of Knaus concerning "[T]he Process of Extruding Lightly Cross-linked Polyolefin Foam" and "Moldable Thermoplastic Polymer Foam Beads." Knaus's applications were later published as patent nos. 5,589,519 ("'519 patent") and 5,605,937 ("'937 patent"). In time, the Sentinel patent application was rejected. According to Sentinel, its application failed because the United States Patent Office ("PTO") found that its claims conflicted with Knaus's '937 patent.

In July 1995, Sentinel asked Platt and Dickinson Wright to file a new patent application for a different invention. However, in its Amended Complaint, Sentinel claims that Platt and Dickinson Wright "incorrectly filed said patent application on behalf of Sentinel (U.S.S.N. 08/502,258). The patent application which was to have been filed on this date concerned 'Cross-linked Foamable Compositions of Silane Grafted Substantially Linear Polyolefins Blended with Polypropylene and Articles Therefrom.' The patent application actually filed by Platt and Dickinson Wright, however, contained essentially the same contents as the prior patent application filed by Platt and Dickinson Wright on behalf of Sentinel on or about September 19, 1994." Am. Compl. ¶ 27. Platt and

Dickinson Wright filed a corrected application for the new invention about a year later, on July 12, 1996. The July 12, 1996 patent application was initially rejected by the PTO on October 3, 1997. In its rejection, the PTO cited two of Knaus' patents as prior art.

Ultimately, Sentinel obtained patents which arose out of or were related to the applications the defendants made on Sentinel's behalf. The first application, 08/308,801, which was submitted to the PTO on September 19, 1994, was eventually re-submitted as a new application on November 15, 1996, and patent no. 5,883,144 was issued on that application on March 16, 1999. Sentinel's second invention regarding "Crosslinked Foamable Compositions of Silane-Grafted, Essentially Linear Polyolefins Blended with Polypropylene and Articles Therefrom," (for which the defendants filed a patent application on July 12, 1996,) was allowed on July 27, 1999 and became patent no. 5,929,129.

B.  Discussion

The defendants argue that they should be granted summary judgment because Sentinel cannot show that any alleged conflict of interest or other negligent acts caused Sentinel harm. Proof of causation and damages are a requirement in all of Sentinel's claims.

With respect to the negligence claim, the plaintiff must show "that the defendant[s] committed a breach of the duty to use reasonable care, that the plaintiffs suffered actual loss, and that the defendant[s'] negligence caused their loss." Glidden v. Maglio, 722 N.E.2d 971, 973 (Mass. 2000). In the context of legal negligence or malpractice, an attorney's duty to his client is to "exercise reasonable care and skill in handling the matter for which the attorney was retained." Colucci v. Rosen, Goldberg, Slavet & Wekstein, P.C., 515 N.E.2d 891, 894 (Mass. App. Ct. 1987). However, a mere breach of the duty of care without any resulting harm is not enough to render the attorney

liable. "Causation is an essential element" of the plaintiff's case. Glidden, 722 N.E.2d at 974. See also McCann v. Davis, Malm & D'Agostine, 669 N.E.2d 1077, 1078-79 (Mass. 1996) (finding that an attorney who represented both buyer and seller in a transaction was not liable to seller because no damage was caused by the dual representation); Cannon v. Sears, Roebuck and Co., 374 N.E.2d 582, 584 (Mass. 1978) ("negligence requires that both negligence and harm be shown, with a causal connection between these two elements").

Massachusetts law has long accepted that an attorney also owes fiduciary duties to his client. In Dunne v. Cunningham, 125 N.E. 560, 561 (Mass. 1920), the Supreme Judicial Court held that the "relation of attorney and client is highly fiduciary in its nature. The attorney is not permitted to take any advantage of his client. The principles holding him to a conspicuous degree of faithfulness and forbidding him to take any personal advantage of his client are well established and . . . [are] rigorously applied." As part of his fiduciary duties, an attorney must steer clear of conflicts of interest which would adversely affect his ability to represent his client. See Mallen & Smith, Legal Malpractice § 14.2 at 538 (5th ed. 2000). However, for a client to sue his attorney successfully for breach of fiduciary duty he must be able to show that the breach caused him some harm. See Van Brode Group, Inc. v. Bowditch & Dewey, 633 N.E.2d 424, 429 (Mass. App Ct. 1994). See also Mallen & Smith, Legal Malpractice § 16.18 at 777 (5th ed. 2000) ("the client must prove not only that there were conflicting interests that prevented the attorney from providing competent representation, but also that such was a proximate cause of the client's injury").

Similarly, to succeed on claims for breach of contract and violation of Chapter 93A, the plaintiff must demonstrate that the defendant's actions caused harm. With respect to the claim of breach of contract, the plaintiff must be able to show that the defendant breached a material

4

provision of the contract and that the plaintiff sustained damages as a result of that breach. See Loranger Constr. Corp. v. E. F. Hauserman Co., 294 N.E.2d 453, 454 (Mass. 1973). Likewise, a plaintiff can only recover for a defendant's unfair trade practices under Chapter 93A if there is "a causal relationship between the alleged unfair acts and the claimed loss." Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc., 532 N.E.2d 660, 665 (Mass. 1989).

Read generously, the amended complaint alleges that due to the defendants' wrongful acts Sentinel's patent applications were denied, delayed, or otherwise impeded and that as a result, Sentinel suffered economic losses. Sentinel relies on four affidavits to support this theory of harm. First, Sentinel offers the deposition of Robert F. Hurley, a Sentinel employee. Sentinel claims that Hurley testified that one of Sentinel's patent applications had to be narrowed in response to Knaus's patents. However, a close examination of the Hurley deposition does not support this argument. Hurley simply testified that the patent application the defendants prepared does not exactly duplicate the materials which Sentinel had forwarded to the defendants. He does not make any statements about why the application differs from Sentinel's write-up of its invention; nor does he say that the application is narrower than the write-up. Mem. Supporting Plfs' Opp'n to Defs' Mot. for Summ. J. Ex. E at 110. All he says is that the application "restructured" the write-up. Nowhere in the testimony that Sentinel has provided does Hurley even mention the Knaus patents.

Next, Sentinel offers the deposition of John Fortkort, a former associate attorney at Dickinson Wright who worked on Sentinel's patent applications. Fortkort testified that when he was working on the Sentinel applications he thought they "overlapped" with Knaus's patent applications, and that he does not "recall ever being able to discern a patentable difference between" the Sentinel applications and the Knaus applications. Id. Ex. A, Fortkort Dep. at 25. While Fortkort's testimony

offers some support for the proposition that the defendants may have had a conflict of interest when they simultaneously represented Knaus and Sentinel, his testimony does not provide any evidence of causation or damage. For example, while Fortkort says he was instructed to emphasize patentable distinctions between the Sentinel and Knaus inventions, he provides no details that would permit a trier of fact to determine whether that assignment was an illegitimate product of a conflict of interest or a course of conduct appropriate to the full and vigorous prosecution of Sentinel's application. Without being able to distinguish between these possibilities, a jury could not find in Sentinel's favor that the conflict had caused it harm. In short, neither Hurley nor Fortkort's testimony demonstrates how the defendants' dual representation affected its representation of Sentinel; neither witness supports Sentinel's contention that its applications were wrongfully delayed or altered by the defendants.

Sentinel has also offered evidence that until patents had issued on its inventions, it decided not to market those inventions. A Sentinel employee, Matthew L. Kozma, testified that without patent protection "the material could have been copied and developmental costs and R&D expenditures . . . would all have been lost. The window of opportunity for significant financial gain" would have been lost. Id. Ex. D, Kozma Dep. at 164. Kozma's testimony also suggests that Sentinel refrained from entering the market because it was worried that its products could be accused of infringing on Knaus's patents. Sentinel's economic expert, Bradley N. Reiff, estimates that by delaying its entry into relevant markets, Sentinel has sustained $18.9 million to $26.8 million of lost profits. However, Reiff expressly notes at the outset of his report that he has formed no opinion regarding liability in this matter, and that he is basing his calculations on the assumption that Knaus's patents kept Sentinel from entering the market with its products. Id. Ex. C, Reiff Dep. at 6.

None of this evidence demonstrates that Sentinel sustained damages as a result of the defendants' negligence or conflict of interest. At best, the evidence shows that Sentinel's patent applications were delayed and narrowed because of Knaus's patents. What is not shown by any of the evidence offered is that if Sentinel had been represented by a different, conflict-free attorney, it would not have experienced the same delays and narrowing. That is to say, Sentinel has not offered evidence to prove that Platt and Dickinson Wright intentionally or inadvertently pulled their punches in prosecuting Sentinel's applications or otherwise failed to vigorously represent Sentinel's interests. Instead, it appears that any potential or actual conflict of interest was not the cause of Sentinel's difficulties. Though the Knaus patents themselves may have limited Sentinel's ability to achieve broad patents, there is no evidence offered that if Sentinel had had different representation, its patent applications would have fared any better.

Finally, Sentinel has produced no evidence to support its claims regarding the delayed filing of the patent application which eventually yielded patent no. 5,929,129. This allegation – set forth in Count II of the Amended Complaint – has seemingly been abandoned by Sentinel. No developed argument was presented in its favor in the summary judgment papers or at oral argument.

C. Conclusion

Since Sentinel has not met its burden to show that the defendants' allegedly wrongful acts caused Sentinel harm, the defendants' motion for summary judgment is GRANTED.

It is SO ORDERED.

July 22, 2002
DATE

_____
DISTRICT JUDGE

7